CHINESE AMERICAN RESTAURANT CORPORATION & another
*vs.* THOMAS H. FINIGAN & others.

Suffolk.   May 14, 1930. — July 18, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Unlawful Interference.   Equity Pleading and Practice,* Bill.

A bill in equity against two defendants was entitled an "alternative bill."  It contained two groups of paragraphs, the first group setting forth a contract in writing between the plaintiff and one defendant, and the second group, entitled "alternative bill," setting forth an oral contract, previously made, between the plaintiff and the second defendant, but making no mention of reference to the contract with the first defendant.  In the prayers, the plaintiff sought to restrain the first defendant from interfering with the second defendant's performance of his contract and to restrain the second defendant from breach of his contract.  The first defendant demurred to the bill. *Held*, that

(1) The bill as framed was in its legal effect the same as if the paragraphs were numbered continuously throughout and the references to an alternative bill were omitted: it was one bill to be read as a whole;

(2) The contract in writing between the first defendant and the plaintiff was admitted by the demurrer and must be considered as a fact in deciding the case on the demurrer.

The first defendant in the suit above described was a labor union of musicians. The plaintiff was the proprietor of a restaurant. The contract in writing between them, among other provisions, required the union to supply to the plaintiff an orchestra comprised of a certain number of musicians to be selected by the union, the personnel of which the union might change at any time. The second defendant was the leader of an orchestra, and the oral contract with him was that his orchestra should furnish music for the plaintiff for a certain period and for no one else. There was no allegation that the union knew of the oral contract. The contract with the first defendant made no reference to the second defendant and his orchestra. The demurrer was sustained. *Held*, that

(1) The rights of the parties under the contract in writing with the first defendant could not be changed by allegations to the effect that it was understood and agreed that the contract was made with reference to the second defendant's orchestra, that the parties had so treated and construed it, that consideration for the contract was the fact that the second defendant and his orchestra would play at the restaurant, and that the plaintiff had advertised this orchestra and it was of great value to them;

(2) The bill did not set forth ground for equitable relief;

(3) The demurrer rightly was sustained.

BILL IN EQUITY, filed in the Superior Court on October 29, 1929, and afterwards amended, as stated in the opinion.

A demurrer was heard by *Greenhalge*, J., and was sustained and a final decree was entered dismissing the bill as amended. The plaintiffs appealed.

The case was submitted on briefs.

*H. W. Sullivan & E. P. Barry*, for the plaintiffs.

*W. J. Day*, for the defendants.

SANDERSON, J. This is a bill in equity brought to restrain the defendants as representatives of the Boston Musicians' Protective Association, a voluntary society, from interfering with the employment of the defendant Bittel and his orchestra at the plaintiffs' place of business. The plaintiff company is a corporation; the plaintiff Bee is its secretary and manager of its restaurant.

The plaintiffs allege in what is called an amended and alternative bill that the defendant Samuel Bittel is the leader of an orchestra which has been playing at the plaintiffs' restaurant ever since its opening on December 29, 1928, when they employed Bittel and his orchestra to furnish music at the restaurant; that the members of the orchestra are members of the association; that the plaintiffs and the defendants entered into a contract on January 17, 1929, which was renewed from time to time, the last renewal to run from August 31, 1929, until June 1, 1930. The contract purported to be executed by Bee and by the defendants' recording secretary, but the bill alleges that it was made between the plaintiffs and the defendants. According to the terms of this contract, the association agreed "to furnish Eight Musicians, members of Local No. 9 as their agent," at the restaurant for a stipulated weekly price. It was provided that musicians of any orchestra performing under this engagement must be members of the American Federation of Musicians. "As the Musicians engaged under the stipulations of this contract are members of the American Federation of Musicians, nothing in this contract shall be so construed as to interfere with any obligation which the Musicians owe to the American Federation of Musicians by reason of their prior obligations to the American Federation of Musicians as members thereof." On October 19, 1929, this association caused a notice to be sent to the defendant Bittel setting forth that, pursuant to the policy of their executive board to change the personnel of the orchestra playing at the various Chinese restaurants, Bittel and his orchestra were requested to terminate their services at the restaurant on November 2, 1929. The bill alleges that Bittel has notified the plaintiffs that although he is willing to perform under the existing contract the other defendants intend to compel him to abandon his contract with the plaintiffs and to cease playing for them; that they have stated that it is their avowed intention to compel the withdrawal of Bittel and his orchestra; that the personal services of Bittel and his orchestra are of unique value and cannot be replaced by the plaintiffs.

Following these allegations is a second series of allegations entitled "Petitioner's Alternative Bill." Many of those previously made are here repeated, but all reference to the written contract between the plaintiffs and the defendants is omitted. In stating the terms of the oral contract between the plaintiffs and Bittel the amount to be paid him is left blank, but it is alleged that he agreed to have his band play at the plaintiffs' restaurant and at no other place at specified hours daily until June 1, 1930, and it is alleged that the defendants are maliciously and without right interfering with this contract. Following all of the allegations is one series of prayers seeking to have the defendants restrained from compelling or inducing Bittel and the members of his orchestra to cease playing for the plaintiffs under the existing contract, or from interfering with any contract between them, or from violating their own contract with the plaintiffs by ordering Bittel and his orchestra to cease playing for the plaintiffs. The plaintiffs also pray that Bittel and his orchestra be restrained from playing for anyone other than the petitioners until June 1, 1930, that each of the defendants be ordered to perform specifically his contract, and that the court retain jurisdiction for the assessment of damages.

The defendants demurred to this bill for the reason that it had not stated a case for equitable relief. This demurrer was sustained by the judge who filed a memorandum stating: "A demurrer to the bill originally filed was sustained with leave to amend within ten days. Thereafter, the plaintiff filed what is entitled 'Petitioner's amended and alternative bill in equity,' which was allowed by the court December 13, 1929. The original bill alleged a violation of a written contract with the Boston Musicians' Protective union, an unincorporated association of which the respondents are officers. The 'alternative bill' alleges an oral contract with certain musicians who are members of the union and interference with it by the respondents. If it stood alone, it seems to me that the alternative bill would not be open to demurrer, but treated as an alternative ground for relief it appears to me to be inconsistent with the

allegations in the amended original bill in that it ignores the contract with the union pleaded in the original bill." The interlocutory decree sustaining the demurrer was followed by a final decree dismissing the bill with costs; the plaintiffs appealed from both decrees.

There is no allegation that the association knew of the alleged oral contract between the plaintiffs and Bittel. It is obvious from a perusal of the written contract made a part of the bill that without it the group of allegations purporting to be an alternative bill would not contain a statement of all material facts upon which plaintiffs' right to the relief sought depends. *Arnold* v. *Maxwell*, 223 Mass. 47. By the terms of that contract the association had assumed the legal obligation to supply eight musicians for a stipulated weekly consideration. The association and not the plaintiffs had the right to select the musicians whom it was under obligation to supply. It could terminate the services of Bittel and his orchestra as its agents, and, as we interpret the allegations of the bill, this is all that it undertook to do. The fact that the plaintiffs had a previous contract with Bittel cannot affect the rights of the parties under the written contract. With this contract in force the association violated no duty it owed the plaintiff in requesting the withdrawal of Bittel and his orchestra, but was exercising rights acquired by its contract to furnish eight musicians.

A bill must contain a clear and exact statement of all material facts upon which the plaintiffs' right to the relief sought depends. *Arnold* v. *Maxwell, supra*. It may be framed with a double aspect, if in both aspects it is the foundation for the same relief. Story, Eq. Pl. 262, 263. *Micou* v. *Ashurst*, 55 Ala. 607, 612. In the case at bar under the first group of allegations, if considered separately, the plaintiffs would not be entitled to any relief, and if the bill were taken for confessed the court would be unable to say under which group of allegations their rights should be determined. But the bill as framed is in its legal effect the same as if the paragraphs were numbered continuously throughout and the references to an alternative bill were omitted. It is one bill to be read as a whole. The contract

between the association and the plaintiffs is a fact alleged; for the purpose of deciding the demurrer it has become an admitted fact; and although not repeated in the series of allegations in the part referred to as the alternative bill, the contract must be considered as a fact in deciding the case upon demurrer. That contract made no reference to Bittel or his orchestra, and the rights of the parties under it cannot be changed by allegations to the effect that it was understood and agreed that the contract was made with reference to the Bittel orchestra, that the parties have so treated and construed it, that consideration for the contract was the fact that Bittel and his orchestra would play at the restaurant, and that the plaintiffs have advertised this orchestra and it is of great value to them. See *Spevack* v. *Budish,* 238 Mass. 215, 217; *Florimond Realty Co. Inc.* v. *Waye,* 268 Mass. 475, 479.

The rule laid down in actions at law in which different inconsistent claims may be set out and pursued until it is decided which affords the remedy, *Whiteside* v. *Brawley,* 152 Mass. 133, 134, *Snow* v. *Alley,* 156 Mass. 193, 195, *Raymond Syndicate, Inc.* v. *American Radio & Research Corp.* 263 Mass. 147, 156. *Donovan* v. *Draper,* 268 Mass. 555, 558 is not applicable to the case at bar. The case is to be distinguished from those in which, if the plaintiff fails to obtain the relief sought, he may be permitted in the alternative to have other relief to which upon the facts he is entitled, *Nudd* v. *Powers,* 136 Mass. 273, *Ginn* v. *Almy,* 212 Mass. 486, 493, *Garden Cemetery Corp.* v. *Baker,* 218 Mass. 339, 342, *Hardin* v. *Boyd,* 113 U. S. 756; and also from those in which he is entitled to the same relief if he establishes either group of allegations. *Gerrish* v. *Towne,* 3 Gray, 82, 86. *Phelps* v. *Creed,* 231 Mass. 228, 230.

The plaintiffs having failed to make out a case upon the pleadings for any part of the relief sought, the final decree must be affirmed with costs.

*Ordered accordingly.*